UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------
                                                )
In re:                                          )    Chapter 11
                                                )
HAVEN ELDERCARE, LLC, *et al.*,[1]              )    Jointly Administered under
                                                )    Case No. 07-32720 (ASD)
         Debtors.                               )
                                                )    RE: Doc. I.D. No. 1338
---------------------------------------------------------

---

[1] Haven Eldercare, LLC, Case No. 07-32720, Waterford Equities, LLC, Case No. 07-32719, Haven Health Care Center of Windham, LLC, Case No. 07-32721, Haven Healthcare Management, LLC, Case No. 07-32722, Haven Health Center of Cromwell, LLC, Case No. 07-32723, Haven Health Center of Rocky Hill, LLC, Case No. 07-32724, Haven Health Center of Danielson, LLC, Case No. 07-32725, Haven Health Center of Litchfield Hills, LLC, Case No. 07-32726, Haven Health Center of East Hartford, LLC, Case No. 07-32727, Haven Health Center of Jewett City, LLC, Case No. 07-32728, Haven Health Center Soundview, LLC, Case No. 07-32729, Haven Health Center of New Haven, LLC, Case No. 07-32730, Haven Health Center of West Hartford, LLC, Case No. 07-32731, Haven Health Center of Farmington, LLC, Case No. 07-32732, Haven Health Center of Norwich, LLC, Case No. 07-32733, Haven Health Center of Waterbury, LLC, Case No. 07-32734, Haven Health Center of South Windsor, LLC, Case No. 07-32735, Haven Health Center of Waterford, LLC, Case No. 07-32736, Haven Health Center of Rutland, LLC, Case No. 07-32740, Lighthouse Medical Supply, LLC, Case No. 07-32741, Haven Health Center of St. Albans, LLC, Case No. 07-32742, Haven Health Care Trust II, LLC, Case No. 07-32743, Cromwell Crest Convalescent Home, Inc., Case No. 07-32744, Applegate Lane, Inc., Case No. 07-32745, Haven Health Center of Claremont, LLC, Case No. 07-32746, Litchfield Health Care Trust, LLC, Case No. 07-32747, Haven Health Care Center of Warren, LLC, Case No. 07-32748, Ferretti's Nursing Home, Inc., Case No. 07-32749, Haven Equities of Warren, Rhode Island, LLC, Case No. 07-32750, Haven Health Center of Pawtucket, LLC, Case No. 07-32751, Pawtucket Equities, LLC, Case No. 07-32752, Haven Health Center of Derry, LLC, Case No. 07-32753, Haven Health Center of Greenville, LLC, Case No. 07-32754, Haven Eldercare of New Hampshire, LLC, Case No. 07-32755, Haven Eldercare II, LLC, Case No. 07-32756, Greenville Equities, LLC, Case No. 07-32757, Hampton Equities, LLC, Case No. 07-32758, Haven Health Center at Seacoast, LLC, Case No. 07-32759, Haven Health Center of Coventry, LLC, Case No. 07-32760, Chelsea Equities, LLC, Case No. 07-32761, Coventry Equities, LLC, Case No. 07-32762, Haven Health Center of Chelsea, LLC, Case No. 07-32763, Haven Eldercare of New England, LLC, Case No. 07-32870, Haven Health Center Common Paymaster, LLC, Case No. 07-32873, Haven Eldercare of Connecticut, LLC, Case No. 07-32962, and Waterbury Equities, LLC, 08-30134.

**MEMORANDUM OF DECISION ON UNITED STATES TRUSTEE'S MOTION
TO COMPEL  PAYMENT OF QUARTERLY FEES
AND FOR OTHER RELIEF**

**I. INTRODUCTION**

The above-captioned matter is before the Court following hearing held August 27, 2008.  Upon the facts adduced, and for the reasons stated hereafter, the instant motion of the United States Trustee shall be **GRANTED** in part and **DENIED** in part.

**II. JURISDICTION**

The captioned bankruptcy cases ("Chapter 11 Cases") were dismissed by this Court on August 8, 2008. In connection with those dismissals this Court explicitly retained jurisdiction "to enforce the Orders [previously entered in these cases] and/or otherwise resolve any disputes, controversies or claims arising out of [those] Orders . . . ." See Doc. I.D. No. 1335.  The instant contested matter is within the scope of the Court's retained jurisdiction.  In the context of that jurisdictional retention, the United States District Court for the District of Connecticut has original jurisdiction over the instant contested matter by virtue of 28 U.S.C. § 1334(b).  This Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984.  This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), (K) and/or (O).

**III. BACKGROUND**

The following background shall constitute the Court's Findings of Fact as required by Fed. R. Bank. P. 7052:

1. On November 20 and 21, 2007, December 3 and 14, 2007, and January 14,

2

2008 (collectively, the "Petition Date"), Haven Eldercare, LLC and 45 of its affiliates (the "Debtors") filed their voluntary petitions for relief ("Petition(s)") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. The Chapter 11 Cases were ordered to be jointly administered under a lead case, *In re Haven Eldercare, LLC*, Case No. 07-32720 (ASD). None of the bankruptcy estates of any of the Debtors have been substantively consolidated.

3. The Statements of Financial Affairs filed by the Debtors indicate that certain of those Debtors made (i) transfers to creditors within the 90 days immediately preceding the filing of their respective Petitions and/or (ii) transfers to "insider" creditors between 90 days and one year before the date of the filing of their respective Petitions (collectively, the "Pre-petition Transfers").

4. During the course of the Chapter 11 Cases, the Court entered, *inter alia*, a *Final Order (I) Authorizing Debtors-In-Possession to Obtain Post-Petition Financing; (II) Granting Liens, Security Interests and Superpriority Status; (III) Authorizing Use of Cash Collateral; (IV) Granting Adequate Protection; and (V) Modifying the Automatic Stay* (Doc. I.D. No. 577), as amended, see Doc. I.D. No. 1064 (the "Final Financing Order").

5. The Final Financing Order authorized certain of the Debtors (the "Borrowers") to enter into and execute the "DIP Loan Documents", including, without limitation, that certain *Post-Petition Revolving Credit and Security Agreement* dated January 25, 2008 (the "DIP Loan Agreement"), by and among the Borrowers and certain financial institutions ("DIP Lenders"), including CapitalSource Finance LLC, as administrative agent for the DIP Lenders ("Agent"), pursuant to which the DIP Lenders provided the Borrowers with a

revolving credit facility in the aggregate amount of $50,000,000.

6. In consideration of the credit facility that is the subject of the DIP Loan Agreement and the Final Financing Order, that Order provides the Agent with, *inter alia*, post-petition lien rights (the "DIP Liens") and a superpriority claim (the "Superpriority Claim"). In addition, the Final Financing Order provides certain of the Debtors' pre-petition lenders with post-petition liens as "adequate protection" for the Debtors' use of their cash collateral.

7. Paragraph 10 of the Final Financing Order establishes, *inter alia*, the mechanism for payment of the allowed fees and expenses of bankruptcy professionals from funds made available from the DIP Lenders under the DIP Loan Agreement. The Debtor-Borrowers are directed to create a line item in their monthly budgets for accruing professional compensation, and then --

> . . . for so long as no written notice of a Termination Event has been given and is continuing, to deposit into an escrow account (the "Professional Expense Escrow") maintained by counsel for Debtors, on the first day of each month the specific line item amount for that month set forth in the Budget for Professional Fees and Expenses pending further order of the Court with respect to the allowance and payment of such fees and expenses . . . ."

Final Financing Order ¶ 10(b) (emphasis in original). Subparagraph 10(c) then provides that --

> . . . (i) the DIP Liens and the Superpriority Claim conferred upon Agent, and (ii) all liens in favor of Prepetition Lenders . . . , shall be subject and subordinate to the rights of Professional Persons with respect to the Professional Expense Escrow and the Carve-Out. Accordingly, neither Debtors nor any of their creditors shall have any claim to or interest in the escrowed Professional Fees and Expenses, other than, with respect to any Professional Fees and Expenses or other amounts, if any, that are escrowed but subsequently disallowed or ordered to be disgorged by final order of the Court, or that remain in escrow following full payment of all allowed

Professional Fees and Expenses . . . .

8. Subparagraph 11(a) of the Final Financing Order creates a contingency for the payment of professional compensation (including Chapter 11 or Chapter 7 trustee compensation) in the event that "there are not sufficient, unencumbered assets in Debtors' respective estates to pay" such compensation. In that event, and "[o]n the occurrence of a Termination Event . . . the DIP Liens, the Superpriority Claim, all liens and administrative claims in favor of Prepetition Lenders shall be subject and subordinate to the payment of [such compensation] in an aggregate amount up to, but not to exceed $1,000,000 . . . . The term "<u>Termination Event</u>" shall mean the earlier to occur of: (i) the last day of the Term (as defined in the DIP Loan Agreement), (ii) the Termination Date (as defined in the DIP Loan Agreement), [or] (iii) an Event of Default under (and as defined in) Article VIII and elsewhere in the DIP Loan Agreement . . . ."

9. Subparagraph 11(b) of the Final Financing Order addresses, *inter alia*, the financing and payment of certain quarterly fees required to be paid by the Debtors to the United States Trustee ("Trustee") pursuant to 28 U.S.C. § 1930(a)(6) (the "UST Quarterly Fees"), to wit:

> UST Quarterly Fees shall be deposited on a monthly basis into the Professional Expense Escrow at the rate set forth in the specific line item amount set forth in the Budget for UST Quarterly Fees. The amounts deposited into the Professional Expense Escrow under this specific paragraph shall not be construed as a cap on the payment of UST Quarterly Fees, and the Debtors shall remain liable for payment of all UST Quarterly fees [sic] due.

Despite this direction it appears that the referenced "Budget"[2] did not provide a specific line

---

[2] It appears that through inadvertence no budget was attached to the proposed Final Financing Order submitted by the parties to the Court; hence no budget was

5

item for UST Quarterly Fees, nor does it appear that UST Quarterly Fees were ever deposited into the Professional Expense Escrow as required. Instead, the Budget includes a footnote to a line item titled, "Chapter 11 and Professional Fee Payments", that states: "UST Fees were included at a rate of $100,000 per month and will be paid directly to the UST's office."

10. Subparagraph 11(b) of the Final Financing Order also addresses an eventuality in the payment of UST Quarterly Fees. That paragraph provides, in relevant part, as follows:

> Upon the occurrence of a Termination Event, to the extent that there are not sufficient, unencumbered assets in Debtors' respective estates to pay such amounts set forth below in this paragraph 11, the DIP Liens, the Superpriority Claim, and all liens in favor of Prepetition Lenders shall be subject and subordinate to the payment of the following: (i) fees required to be paid to the Clerk of the Court; and (ii) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) . . . .

11. On July 4 and July 21, 2008, this Court entered various orders approving the sale of substantially all of the Debtors' assets to, *inter alia*, the Debtors' pre- and post-petition secured lenders and certain lessors (the "Sale Orders"). See Doc. I.D. Nos. 1161, 1163, 1164, 1165, 1167, 1171, 1172, and 1227. Also on July 4, 2008, the Court entered orders authorizing the turnover of certain of the Debtors' properties and facilities to the State of Connecticut (the "Turnover Orders"). See Doc. I.D. Nos. 1166 and 1173.

---

appended to the Final Financing Order as entered by this Court. The budget attached to an *interim* financing order (the "Interim Budget") was made part of the record of this matter. Because there appears to be no dispute that, *with respect to the subject matter of the instant contested matter,* the Interim Budget is substantially identical to the budget prepared for the Final Financing Order, this Court will consider the Interim Budget as conclusive evidence of the Final Financing Order budget's treatment of UST Quarterly Fees.

12. On July 15, 2008, the Trustee filed a motion requesting that this Court dismiss all of the Chapter 11 Cases (Doc. I.D. No. 1201) (the "Motion to Dismiss"). In that motion, the Trustee stated that she "believe[d]" that after the closing of the transactions contemplated by the Sale Orders and Turnover Orders, "the only assets that will be retained by any of the Debtors may be various claims, including Chapter 5 claims, of uncertain value and *de minimis* cash, with which to pursue such claims."

13. On August 8, 2008, after due notice and a lengthy hearing on the Motion to Dismiss, this Court entered an order dismissing the Chapter 11 Cases (Doc. I.D. No. 1335).

14. It is undisputed that the Debtor parties to the DIP Loan Agreement were in default under that instrument prior to the dismissal of the Chapter 11 Cases.

15. On August 8, 2008, the Trustee filed the instant *United States Trustee's Motion to Compel the Filing of Monthly Operating Reports and the Payment [sic] Chapter 11 Quarterly Fees* (Doc I.D. No. 1338) (the "Motion to Compel"). The Motion to Compel seeks relief from this Court in aid of the Trustee's (i) *calculation* of the amount of UST Quarterly Fees due from the Debtors for the second and third quarters of calendar year 2008 and (ii) *collection* of such UST Quarterly Fees. More specifically, the Trustee asks the Court to compel (i) the Debtors immediately to file Monthly Operating Reports ("MOR(s)") for each of the subject months (the "MOR Request"), and (ii) the "Prepetition Lenders"[3] and the Debtors to pay the UST Quarterly Fees ultimately determined to be due to the Trustee (the "Payment Request").

---

[3] The Trustee seeks relief only from "Prepetition Lenders", defined in her motion as "CapitalSource CF LLC, Omega Asset (CT) DIP, LLC, OHI Asset (CT) Lender, LLC, Omega Healthcare Investors, Inc., and OHI (Connecticut), Inc." The Trustee's characterization of all of these entities as "Prepetition Lenders" appears to be inaccurate. First of all, the presence of the acronym "DIP" in one of the names certainly suggests that it was not a pre-petition lender to these Debtors. Further, the Trustee's characterization (i) conflicts with two of these entities' self-description as exclusively "post-petition lenders" and (ii) omits another entity - CapitalSource Finance LLC - which is admittedly a "prepetition lender". *See* fn. 4, *infra*. Regardless of the appellation ascribed to these entities by the Trustee, it is clear that these are the only "lenders" from which she seeks relief. Therefore, in the interest of clarity, these entities, collectively, shall be referred to hereafter as the "Lenders".

8

16. The Debtors did not oppose the Trustee's Payment Request, or her MOR Request, except to seek leave to provide such reporting through the device of a previously-submitted "spreadsheet", in lieu of formal MORs.

17. Having presumably received the subject MORs, or a satisfactory substitute, the Trustee, on September 9, 2008, filed her *United States Trustee's Calculation of Fees Owed Pursuant to 28 U.S.C. § 1930(a)(6)* (Doc. I.D. No. 1406) (the "Trustee's Statement"), in which she stated that, as of August 31, 2008, $371,702.61 was due from the Debtors, in the aggregate, for UST Quarterly Fees for the Second and Third Quarters of 2008. This total is broken down by Debtor and Quarter in the Exhibits that accompany the Trustee's Statement.

18. Certain entities[4] have vigorously contested the Trustee's Payment Request, claiming, *inter alia*, that the terms of Subparagraph 11(b) of the Final Financing Order do not provide a basis for such an obligation under the record facts of this matter and the underlying Chapter 11 Cases.

## IV. DISCUSSION

In light of what appears to be a consensual resolution of the MOR Request,[5] this Memorandum of Decision will focus upon and determine only the propriety of the Payment Request. As regards that Request, the Trustee has failed to establish a basis for compelling the Lenders to pay what is otherwise a statutory obligation of the Debtors under

---

[4] A *Response* to the Motion to Compel was filed by and on behalf of the following-described entities: "CapitalSource Finance LLC . . . as agent for the post-petition lenders and as a prepetition lender, [and] CapitalSource CF LLC and OHI Asset (CT) DIP, LLC, as post-petition lenders . . . ."

[5] *See* ¶¶ 16 and 17 of Section III of this Memorandum of Decision.

28 U.S.C. § 1930(a)(6) ("Section 1930").[6]

**A.  Right to Payment.**

At the most fundamental level, in order to compel payment, the Trustee must establish a *right to payment* from the Lenders.  This she has failed to do.

The only parties liable for UST Quarterly Fees are "[t]he parties commencing a case under title 11", *i.e.* the Debtors in these voluntary Chapter 11 Cases.  See 28 U.S.C. § 1930(a) (2007).  Consequently, the Lenders are not *statutorily* liable for the payment of UST Quarterly Fees; nor has the Trustee established any contractual or judicially-imposed liability for such Fees.

The only authority cited by the Trustee for her alleged right to payment from the Lenders is Subparagraph 11(b) of the Final Financing Order.  Yet none of the language of that subparagraph mentions any *affirmative* Lender obligation to *pay* UST Quarterly Fees.  Rather, the only Lender obligation identified therein, vis-a-vis the Trustee, is lien and claim *subordination*.  In other words, in a *competition* between the Trustee and the Lenders for

---

[6] Section 1930 provides in relevant part as follows:

  (a) The parties commencing a case under title 11 shall pay to the clerk . . . the following filing fees:

\* \* \* \*

  (6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first.

\* \* \* \*

28 U.S.C. § 1930 (2007).  In view of the Debtors' statutory obligation to pay UST Quarterly Fees, and the absence of any Debtor objection, the Payment Request shall be granted *with respect to the Debtors*.

the *Debtors' assets*, certain of the Lenders' liens and claims would be "subject and subordinate to payment of" UST Quarterly Fees. Yet this subordination suggests nothing of a Lender *payment* obligation to the Trustee. At most it acknowledges that the Trustee might acquire a competing interest in the Debtors' assets by virtue of her right to payment *from the Debtors*.

For instance, the Trustee might benefit from her subordination rights if she were to obtain a judgment against one or more of the Debtors for UST Quarterly Fees, and then seek to execute upon the assets of those Debtor(s) to satisfy that judgment. In that context, the Trustee's judgment execution rights in those Debtors' assets would take precedence over the subject liens and claims of the Lenders in those same assets. Nonetheless, the instant motion of the Trustee does not pray for a declaration of subordination, or similar relief, in specific assets of one or more of the Debtors. Instead, the Trustee seeks, in essence, to establish the joint and several *liability of the Lenders*, *inter alia*, for UST Quarterly Fees; and consonant therewith, she prays for this Court to compel the Lenders, *inter alia*, to *pay* those Fees from their own funds. There simply is no support for that request.

**B. Extent of Unencumbered Assets.**

Even if this Court could imply or infer a Trustee right to payment from the Lenders from the operative language of Subparagraph 11(b), the Trustee still has not met her burden to establish the conditions precedent to that putative right to payment. Namely, the Trustee has not established the "extent . . . [of] unencumbered assets in the Debtors' respective estates". In this connection, the Trustee's claims suffer from two major

conceptual deficiencies, a discussion of which follows.

**1. Temporal reference.**

In determining the extent to which there were unencumbered assets in the Debtors' estates, a temporal reference point must be identified. Subparagraph 11(b)'s introductory clause, "[u]pon the occurrence of a Termination Event . . . .", makes clear that the relevant asset determination should be performed as of the date of the "occurrence of a Termination Event". Among the Termination Events identified by the Final Financing Order are "Events of Default" under the DIP Loan Agreement.

As noted at ¶ 14 of Section III of this Memorandum of Decision, an Event of Default, and thus a Termination Event, had occurred prior to the dismissal of the Chapter 11 Cases. Accordingly, the "unencumbered asset" calculus required by Subparagraph 11(b) of the Final Financing Order must be conducted on a pre-dismissal basis, *i.e.* it must include an assessment of the value of assets, *inter alia*, existing solely by virtue of the pendency of the Chapter 11 Cases, namely certain transfer avoidance/recovery claims potentially arising under Chapter 5 of the Bankruptcy Code as a result of the Pre-Petition Transfers (the "Chapter 5 Claims").

In advancing their own analysis of "unencumbered assets", the Lenders direct the Court's attention to the Chapter 5 Claims, *inter alia*.[7] The parties agree that the Chapter

---

[7] The Lenders have suggested at least three potential classes of unencumbered assets that may exist in the Debtors' estates: (i) the Chapter 5 Claims; (ii) "directors and officers" insurance policies; and (iii) the Professional Expense Escrow. This Court has not received sufficient evidence establishing any value in any Debtor insurance policies. And with respect to the Professional Expense Escrow, the Court assumes, without deciding, that that escrow fund is not property of any Debtor's estate given that subparagraph 10(c) of the Final Financing Order determined that "neither Debtors nor any of their creditors shall have any claim to or interest in the escrowed Professional Fees and Expenses . . . ."

5 Claims were "unencumbered" while they existed. Therefore, by referencing the existence of the Chapter 5 Claims, the Lenders have successfully rebutted any *prima facie* case that the Trustee may have established regarding an insufficiency of unencumbered assets. Further, the Trustee has failed to carry her resulting and ultimate burden of explaining why such Chapter 5 Claims were of no value during their existence.

**2. Individualized estate analysis.**

It is also critical to recognize that Subparagraph 11(b)'s use of the phrase, "unencumbered assets in the Debtors' *respective estates*" (emphasis supplied), makes clear the intent of the parties and the Court that an assessment of the extent of "unencumbered assets" be performed for *each* Debtor's estate *individually*.

Throughout the pendency of the Chapter 11 Cases this Court has consistently admonished the parties to remember that none of the estates of the Debtors have been substantively consolidated. To this point in time it has been generally possible to avoid an estate-by-estate financial analysis in the context of contested matters in these Chapter 11 Cases. However, the language of Subparagraph 11(b) of the Final Financing Order makes clear that in any attempt to establish subordination rights thereunder the Trustee must meet her burden with respect to the estate of each individual Debtor that she claims owes UST Quarterly Fees.

Accordingly, even if she had established a Lender payment obligation, it was ultimately the Trustee's burden to show, for *each* of the relevant Debtors, that there are not sufficient unencumbered assets in those Debtors' estates to pay such UST Quarterly Fees. This would have required, at a minimum, that the Trustee demonstrate, *for each Debtor*,

why, and to what extent, the Chapter 5 Claims in that Debtor's estate were not viable causes of action able to result in positive monetary recoveries.  The Trustee failed even to undertake such an individualized analysis before this Court.

### V. CONCLUSION

For the foregoing reasons, the United States Trustee's Motion to Compel (Doc. I.D. No. 1338) shall be **GRANTED** in part and **DENIED** in part by separate order.

Dated: October 17, 2008                                         BY THE COURT

*[signature]*
Albert S. Dabrowski
**Chief United States Bankruptcy Judge**