UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE:<br><br>HAVEN ELDERCARE, LLC, *et al.*,[1]<br><br>      DEBTORS. | CHAPTER 11<br><br>Jointly Administered Under<br>CASE NO. 07-32720<br><br>RE: ECF NO. 1558 |
| UNITED STATES OF AMERICA<br>*ex rel.* JULIE GAMBLE,<br><br>      PLAINTIFF,<br><br>v.<br><br>HAVEN ELDERCARE, LLC, *et al.*,<br><br>      DEFENDANTS. | District Court Case No.<br>3:07-cv-01834 (PCD)[2]<br><br>RE: D. Conn. ECF No. 62 |

**MEMORANDUM OF DECISION AND ORDER
ON REFERRAL FROM DISTRICT COURT OF PLAINTIFF'S MOTIONS TO
SUBSTITUTE PARTIES AND FOR ATTORNEY'S FEES**

---

[1] Haven Eldercare, LLC, Case No. 07-32720, Waterford Equities, LLC, Case No. 07-32719, Haven Health Care Center of Windham, LLC, Case No. 07-32721, Haven Healthcare Management, LLC, Case No. 07-32722, Haven Health Center of Cromwell, LLC, Case No. 07-32723, Haven Health Center of Rocky Hill, LLC, Case No. 07-32724, Haven Health Center of Danielson, LLC, Case No. 07-32725, Haven Health Center of Litchfield Hills, LLC, Case No. 07-32726, Haven Health Center of East Hartford, LLC, Case No. 07-32727, Haven Health Center of Jewett City, LLC, Case No. 07-32728, Haven Health Center Soundview, LLC, Case No. 07-32729, Haven Health Center of New Haven, LLC, Case No. 07-32730, Haven Health Center of West Hartford, LLC, Case No. 07-32731, Haven Health Center of Farmington, LLC, Case No. 07-32732, Haven Health Center of Norwich, LLC, Case No. 07-32733, Haven Health Center of Waterbury, LLC, Case No. 07-32734, Haven Health Center of South Windsor, LLC, Case No. 07-32735, Haven Health Center of Waterford, LLC, Case No. 07-32736, Haven Health Center of Rutland, LLC, Case No. 07-32740, Lighthouse Medical Supply, LLC, Case No. 07-32741, Haven Health Center of St. Albans, LLC, Case No. 07-32742, Haven Health Care Trust II, LLC, Case No. 07-32743, Cromwell Crest Convalescent Home, Inc., Case No. 07-32744, Applegate Lane, Inc., Case No. 07-32745, Haven Health Center of Claremont, LLC, Case No. 07-32746, Litchfield Health Care Trust, LLC, Case No. 07-32747, Haven Health Care Center of Warren, LLC, Case No. 07-32748, Ferretti's Nursing Home, Inc., Case No. 07-32749, Haven Equities of Warren, Rhode Island, LLC, Case No. 07-32750, Haven Health Center of Pawtucket, LLC, Case No. 07-32751, Pawtucket Equities, LLC, Case No. 07-32752, Haven Health Center of Derry, LLC, Case No. 07-32753, Haven Health Center of Greenville, LLC, Case No. 07-32754, Haven Eldercare of New Hampshire, LLC, Case No. 07-32755, Haven Eldercare II, LLC, Case No. 07-32756, Greenville Equities, LLC, Case No. 07-32757, Hampton Equities, LLC, Case No. 07-32758, Haven Health Center at Seacoast, LLC, Case No. 07-32759, Haven Health Center of Coventry, LLC, Case No. 07-32760, Chelsea Equities, LLC, Case No. 07-32761, Coventry Equities, LLC, Case No. 07-32762, Haven Health Center of Chelsea, LLC, Case No. 07-32763, Haven Eldercare of New England, LLC, Case No. 07-32870, Haven Health Center Common Paymaster, LLC, Case No. 07-32873, Haven Eldercare of Connecticut, LLC, Case No. 07-32962, and Waterbury Equities, LLC, 08-30134.

[2] Referred to the Bankruptcy Court for disposition of certain motions in light of relevant Bankruptcy Court Orders entered in the above-captioned jointly-administered bankruptcy cases.

ALBERT S. DABROWSKI, United States Bankruptcy Judge

## I. INTRODUCTION

The matter presently before the Court is on referral from the United States District Court for the District of Connecticut (Dorsey, J.), pursuant to a *Ruling on Motions* (hereinafter, the "Referral Order"), D.Conn. ECF No. 62 [3], in the *qui tam* case captioned *United States of America ex rel. Julie Gamble v. Haven Eldercare, LLC, et al.*, Docket No. 3:07-cv-01834 (hereinafter, the "Qui Tam Action"). The *qui tam* relator therein, Julie Gamble (hereinafter, the "Relator") filed the *Plaintiff's Motion for Statutory Attorneys' Fees, Expenses and Costs Pursuant to 31 U.S.C. §3730* (hereinafter, the "Fee Motion"), D.Conn. ECF No. 43, as well as the *Plaintiff's Motion to Substitute Parties in Connection with Application for Attorneys' Fees* (hereinafter, the "Substitution Motion"), D.Conn. ECF No. 45 (collectively hereinafter, the "Pending Motions"). In its Referral Order, the District Court, finding that the interpretation of certain orders entered by this Court in *In re Haven Eldercare, L.L.C., et al.*, Case No. 07-32720, were critical to the disposition of the Pending Motions, referred the Pending Motions to the Bankruptcy Court for determination.

## II.   JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant contested matter by virtue of 28 U.S.C. §1334(b). This Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§157(a), (b)(1), the District Court's General Order of Reference dated

---

[3] Unless otherwise indicated, all references herein to the Electronic Case Filing numbers of documents filed in the District Court in the referenced *qui tam* case are cited as "D.Conn. ECF No. __"; documents filed in the Debtors' jointly administered Chapter 11 bankruptcy cases are cited as "ECF No. __".

September 21, 1984, and the Referral Order dated December 14, 2010.

The captioned bankruptcy cases (hereinafter, the "Chapter 11 Cases") were dismissed by this Court on August 8, 2008. In connection with those dismissals this Court explicitly retained jurisdiction "to enforce the Orders [previously entered in these cases] and/or otherwise resolve any disputes, controversies or claims arising out of [those] Orders . . . ." *See Order Granting United States Trustee's Motion to Dismiss All Haven Eldercare, LLC - related Chapter 11 Cases* (hereinafter, the "Dismissal Order"), ECF No. 1335 at 2. As the instant contested matters "involve the interpretation of orders the Bankruptcy Court entered in [the Chapter 11 Cases]," *see* Referral Order at 1, they are within the Bankruptcy Court's retained jurisdiction.

This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(N), (O) and 11 U.S.C. §105(a):

> It is well-settled that bankruptcy courts have core jurisdiction to approve section 363 sales, see 28 U.S.C. § 157(b)(2)(N) ("[C]ore proceedings include . . . orders approving the sale of property."), and corollary jurisdiction to interpret and enforce their own orders carrying out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a); *cf. also* 28 U.S.C. § 1651 ("All Writs Act"). Moreover, courts have characterized the injunctive authority of bankruptcy courts as "core" when the rights sought to be enforced by injunction are based on provisions of the Bankruptcy Code, such as the "free and clear" authority of section 363(f). *See In re Millenium Seacarriers, Inc.*, 458 F.3d [92, 95 (2d Cir. 2006)] (holding that an adversary action which turned on the terms of a sale order was a core proceeding); *Michigan Employment Sec. Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1144–45 (6th Cir. 1991) (affirming bankruptcy court's core jurisdiction to issue an order because, inter alia, debtor-appellant and its successor-purchaser asserted "free and clear" rights under section 363(f)); *see also TWA*, 322 F.3d at 288–91 (successor liability claims against purchaser were properly extinguished under section 363(f)); *Smart World Techs. LLC v. Juno Online Servs., Inc.* (*In re Smart World Techs., LLC*), 423 F.3d 166, 169 n. 3 (2d Cir. 2005) (" Section 363 permits sales of assets free and clear of claims and interests. It thus allows purchasers . . . to acquire

3

assets without *any* accompanying liabilities.") (emphasis added); *cf. MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988) ("The injunctive orders issued by the Bankruptcy Court were necessary to effectuate the Court's . . . authority. . . to make sure that claims to [the debtor's] insurance proceeds were . . . channeled to the settlement fund and could not be asserted directly against the insurers. The authority to issue the injunction is thus a corollary to the power to dispose of assets free and clear and to channel claims to the proceeds."); *id.* at 94 (citing section 363(f) cases as support for injunctive authority). The injunctive provisions in the Sale Order enjoining successor liability would thus be within the Bankruptcy Court's core jurisdiction to authorize and effectuate the 363 Transaction "free and clear" of Appellants' claims under section 363(f).

*In re Motors Liquidation Co.*, 428 B.R. 43, 56 -57 (S.D.N.Y. 2010).

### III.   BACKGROUND

The Court presumes familiarity with the extensive procedural history attending this bankruptcy case and proceedings related thereto. The following is a brief summary of the factual background relevant to the pending motions.

1. On November 20 and 21, 2007, December 3 and 14, 2007, and January 14, 2008 (collectively, the "Petition Dates"), Haven Eldercare, LLC and 45 of its affiliates (hereinafter, the "Chapter 11 Debtors") commenced their bankruptcy cases (the "Chapter 11 Cases") by filing voluntary petitions under Chapter 11 of the Bankruptcy Code.

2. On December 18, 2007, the Relator filed, under seal, a *qui tam* complaint against certain of the Chapter 11 Debtors, alleging, *inter alia,* that the Debtors had made claims for reimbursement under the Medicare program that were in violation of the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq*. (hereinafter, the "False

Claims Act" or "FCA").[4]

3. The Chapter 11 Cases were ordered to be jointly administered under a lead case, *In re Haven Eldercare, LLC*, Docket No. 07-32720. None of the bankruptcy estates of any of the Chapter 11 Debtors were substantively consolidated.

4. On July 4, 2008, this Court entered various orders (hereinafter, the "Sale Orders") approving the sale of substantially all of the Debtors'[5] assets - free and clear of any claims or encumbrances - to, *inter alia*, the Debtors' pre- and post-petition secured lenders and certain lessors. *See* ECF Nos. 1161, 1163, 1164, 1165, 1167, 1171, 1172, and 1227.[6] All of the Debtors' assets were fully encumbered and the Debtors had no assets available for distribution to unsecured creditors.

5. The Sale Orders further authorized the Debtors to assume and assign the Medicare provider agreements for twenty-one of their nursing homes to five new nursing home operators (hereinafter, the "New Providers") with the condition that any waiver or release from the successor liability provisions of such agreements would occur if and only if the Debtors and the United States filed a stipulation so stating and that such stipulation was entered as an order by the Court. *See, e.g.* Sale Order, ECF No. 1161 ¶13(b).

---

[4] The question of whether the commencement or pursuit of the Qui Tam Action against the Debtors was a violation of the automatic stay of §362(a) was not presented to and is not presently before the Court.

[5] As used herein, the term "Chapter 11 Debtors" refers to all of the Haven Eldercare affiliates who filed Chapter 11 bankruptcy cases. The Court uses the term "Debtors" to refer specifically to those of the Chapter 11 Debtors who are listed in Paragraph 6 herein as having transferred assets and Medicare provider agreements to the Purchasers and New Providers, and who were named as defendants in the *qui tam* complaint.

[6] Because the relevant terms of the Sale Orders and Stipulated Orders cited herein are identical, the Court's citations are, unless otherwise noted, to TC Healthcare I, LLC's Sale Order, ECF No. 1161, and Stipulated Order, ECF No. 1296.

6. On July 30, 2008, this Court approved five proposed documents entitled *Stipulation and Order Respecting the Terms of Assignment of Medicare Provider Agreements to* . . . (hereinafter, the "Stipulated Orders"), ECF Nos. 1295 - 1299, in accordance with which each of the five New Providers would pay the following specified sums to the United States in exchange for assignment – with a release from any successor liability thereunder for the Debtors' Covered Conduct – of the Medicare provider agreements of certain specified Debtors:

   (a) Stipulated Order, ECF No. 1295, provided for Farmington Rehab Center, LLC to pay the sum of $5,000 for assignment of the Medicare provider agreement of Haven Health Center of Farmington, LLC;

   (b) Stipulated Order, ECF No. 1296, provided for TC Healthcare I, LLC (hereinafter, "TC") to pay the sum of $80,000 for assignment of the Medicare provider agreements of the fourteen Debtors specified therein;

   (c) Stipulated Order, ECF No. 1297, provided for Spectrum Healthcare Torrington, LLC to pay the sum of $5,000 for assignment of the Medicare provider agreement of Haven Health Center of Litchfield Hills, LLC;

   (d) Stipulated Order, ECF No. 1298, provided for TI-Cromwell, LLC, TI-Waterbury, LLC, TI-East Hartford, LLC, and TI-Derry, LLC (hereinafter together, "TI") to pay the sum of $20,000 for assignment of the Medicare provider agreements of the four Debtors specified therein; and

   (e) Stipulated Order, ECF No. 1299, provided for Connecticut Health of South Windsor, Inc. to pay the sum of $5,000 for assignment of the Medicare provider agreement of Haven Health Center of South Windsor, LLC.

7. Following the sale of the Debtors' assets, the Bankruptcy Court, on August 8, 2008, entered the Dismissal Order, ECF No. 1335, which included, *inter alia*, the following provisions:

> ORDERED, pursuant to the Court's authority under 11 U.S.C. §349(b), notwithstanding the dismissal of these Cases, the rights and obligations acquired by any entity pursuant to orders previously entered in these Cases (the "Orders") are not hereby altered, affected or impaired, and the Orders are not otherwise affected by the dismissal of these Cases, and remain in full force and effect; and it is further
> ORDERED, that notwithstanding the dismissal of these Cases, the Court shall retain jurisdiction to enforce the Orders and/or otherwise resolve any disputes, controversies or claims arising out of the Orders.

Dismissal Order, ECF No. 1335 at 2.

8. On February 4, 2010, the United States declined to intervene in the Qui Tam Action. The District Court, on February 5, 2010, lifted the seal prospectively as to future docket entries; it unsealed the record retrospectively only as to the *qui tam* complaint.[7] On June 4, 2010, the Debtors and the New Providers were served with copies of such complaint.

9. The District Court, on June 30, 2010, dismissed the Qui Tam Action subject to the Relator's application for attorney's fees. The Relator, on July 29, 2010, filed the Fee Motion and the Substitution Motion with the District Court. The District Court, on December 14, 2010, in response to motions by TC and TI, referred the Fee and Substitution Motions to the Bankruptcy Court for determination in accordance with the Sale Orders and Stipulated Orders that had been entered in the Debtors'

---

[7] The balance of the record of the Qui Tam Action, D.Conn. ECF Nos. 2 through 28, remains under seal.

Chapter 11 cases. The Bankruptcy Court heard oral arguments on the Pending Motions on March 16, 2011, after which it took the matter under advisement.

### IV.   DISCUSSION

*A.   Issue*

Presently before the Court are the Relator's two Pending Motions, one of which is procedural in nature and the other substantive. The Substitution Motion is a procedural matter:

> Rule 25(c) of the Federal Rules of Civil Procedure provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." "[G]ranting substitution of one party in litigation for another under Rule 25(c) is a discretionary matter for the trial court." "The primary consideration in deciding a motion pursuant to Rule 25(c) is whether substitution will expedite and simplify the action." The rule's purpose is "to allow an action to continue unabated when an interest in a lawsuit changes hands, without initiating an entirely new suit." "If a transferee is joined or substituted as a plaintiff or defendant, it is not because its substantive rights are in question, but rather because it has come to own the property in issue." "A successor in interest is bound by a judgment against its predecessor even if substitution is not effected." "The merits of the case and the disposition of the property are still determined with respect to the original parties." Moreover, a "court gains personal jurisdiction over [a successor] simply as a consequence of [its] status as a successor in interest." "Personal jurisdiction is not created by Rule 25 . . . but exists because successors in interest . . . [are] bound by the judgment" regardless of their joinder. "Although substitution usually is effected during the course of litigation, substitution is appropriate even after final judgment or on appeal if the transfer of interest took place after the case was filed."

*Software Freedom Conservancy, Inc. v. Best Buy Co., Inc.*, No. 09 Civ. 10155, 2010 WL 4860780, at *2 (S.D.N.Y. Nov. 29, 2010) (citations omitted). The United States Court of Appeals for the Second Circuit has held that:

> Although granting substitution of one party in litigation for another under Rule 25(c) is a discretionary matter for the trial court, *see Federal Deposit Ins.*

> *Corp. v. Tisch,* 89 F.R.D. 446, 448 (E.D.N.Y.1981), such discretion may not be abused by allowing substitution in the absence of a transfer of interest.

*In re Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996). Accordingly, the Substitution Motion may not be granted unless the New Providers are the successors in interest of the Debtors as to the Qui Tam Action, i.e., that the New Providers have assumed successor liability thereunder.

In the Fee Motion, the Relator asserts her substantive claim, asking the Court to hold the New Providers liable for the attorney's fees she incurred in her pursuit of the Qui Tam Action against the Debtors. The *qui tam* complaint contains no allegations of misconduct of the New Providers, which were not even in existence at the time of the alleged misconduct. Rather, the Relator contends that, under the FCA, the Debtors are liable for her fees and that, as assignees of the Debtors' Medicare provider agreements, the New Providers assumed successor liability therefor. The Relator has neither served the Debtors with copies of the Pending Motions, nor pursued the claims hereunder against the Debtors. Accordingly, the Court herein considers the Pending Motions only insofar as they pertain to the New Providers.

As a threshold matter to the resolution of either of the Pending Motions, the Court must determine whether the New Providers have incurred successor liability for the fees at issue.

### B.    *Arguments*

The Relator claims that the payments, totaling $115,000, made by the New Providers as consideration for assignment of the Debtors' Medicare provider agreements constituted an "alternate remedy," as that term is used in 31 U.S.C. §3730(c)(5), in the Qui

9

Tam Action; that she is therefore entitled to attorney's fees in accordance with the fee-shifting provisions of the False Claims Act in 31 U.S.C. §3730(d); and that the New Providers are liable for payment of such fees as successors in interest to the Debtors.

The New Providers contend that the terms of the Stipulated Orders and Sale Orders explicitly released them from any potential successor liability claims; and, in the alternative, that they did not, under the otherwise applicable nonbankruptcy law, incur such liability as successors to the Debtors.

### C.     Bankruptcy Court Orders

The False Claims Act provides, in relevant part, that a Relator in a successful *qui tam* action, in addition to receiving a share of the proceeds thereof, "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant." 31 U.S.C. §3730(d)(2) (emphasis added); *see, also* (d)(1) (same).

The Sale Orders provided for the sale of the Debtors' assets, which were fully encumbered by the purchasers' security interests therein, free and clear of all claims:

> [T]he Acquired Assets shall be sold, transferred, or otherwise conveyed to Purchasers entirely free and clear of all Liens, including, without limitation, all encumbrances, obligations, liabilities, interests, contractual commitments, claims, . . .or restrictions of any kind or nature whatsoever . . . including, without limitation, . . . any claim or interest based on any theory of successor liability, *de facto* merger, substantial continuity, or similar theory . . . . Notwithstanding anything to the contrary contained herein, successor liability pursuant to the Medicare provider agreements shall be as set forth in paragraph 13 of this Sale Order.

Sale Order, ECF No. 1161 ¶8. Concerning the assumption and assignment of the Debtors'

Medicare provider agreements, the Sale Order further states, *inter alia*:

> 13.(b) To the extent any Medicare provider agreement is to be assigned with a partial waiver or release of Medicare Provider Agreement Successor Liabilities, such assignment shall not occur unless and until HHS, CMS and the Department of Justice file with this Court a proposed Stipulation and Order in respect of the Medicare provider agreement which sets forth the terms and conditions upon which the Government agrees the Medicare provider agreement shall be assigned, together with a specific description of such partial waiver or release of Medicare Provider Agreement Successor Liabilities. The parties shall thereupon request that the Court enter the Stipulation as an order of this Court authorizing the modified terms of assumption and assignment of the respective Medicare provider agreement.
> (c) In the absence of a filed Stipulation and Order, this Sale Order shall not have the effect of limiting, modifying or impairing any term of any Medicare provider agreement, and shall not have the effect of limiting any Medicare Provider Agreement Successor Liabilities.
> 14. Except as set forth in paragraph 13 or as subsequently agreed to in the proposed Stipulation and Order, if any, nothing in this Sale Order shall limit the federal government's right to pursue or collect any claim for civil fraud under the False Claims Act, 31 U.S.C. §[§] 3729-3733 . . . .

Sale Order, ECF No. 1161 ¶¶13, 14.

In accordance with ¶13(b) of the Sale Order, the Stipulated Orders, ECF Nos. 1295 - 1299, filed by the New Providers acknowledged the existence of the Qui Tam Action then pending against the Debtors, and provided, in Part IV, entitled "FCA Successor Liability Release of Covered Conduct:"

> 1. In consideration of the agreements and concessions set forth in this Stipulation, and subject to the exceptions set forth in IV.3 below, and conditioned upon full payment of the Settlement Amount, as set forth in Section V below, the United States, on behalf of itself, its officers, agents, agencies and departments, agrees to release the New Provider, as assignee of the Medicare provider agreements enumerated on Exhibit A hereto for successor liability for any civil monetary claim the United States has or may have for the Covered Conduct under the FCA . . . .

Stipulated Order, ECF No. 1296, Pt. IV ¶1. The Stipulated Order defined the Covered

Conduct to include the *qui tam* complaint's allegations against the Debtors.

### D.    Legal Analysis

With the exception of matters within the scope of the "CMS Successor Liability," the Sale Orders, pursuant to Bankruptcy Code §363(f) and the relevant case law of the Second Circuit and elsewhere, provided for the sale of substantially all of the Debtors' assets free and clear of, *inter alia*, all successor liability claims.  Sale Order ¶II, ¶8; *See, also*, *In re Chrysler LLC*, 576 F.3d 108, 126 (2d Cir. 2009) (holding that §363(f) permits the sale of a debtor's assets free and clear of successor liability claims), *vacated and remanded "with instructions to dismiss the appeal as moot,"* 130 S.Ct. 1015 (2009); *Douglas v. Stamco*, 363 Fed.Appx. 100 (2d Cir. 2010) (same); *In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003) (same).

Because Medicare generally makes payments for services when billed by the provider and later conducts an audit to adjust for any overpayments or underpayments, Medicare provider agreements assigned to a new operator typically include a provision for "CMS Successor Liability."  Because the assumption and assignment of the Debtors' Medicare provider agreements was essential to the sale transactions, and because Medicare's payment procedures depended on the ability to adjust payments retrospectively, the Sale Orders required that any partial waiver or release of such "CMS Successor Liability" be set forth in the proposed Stipulated Order agreed to by the United States, the Debtors, and the New Providers, and entered as an order of the Court.

As noted, *supra*, such Stipulated Orders defined the Covered Conduct as the misconduct of the Debtors as alleged in the *qui tam* complaint and released the New

Providers from any liability therefor. As consideration for such release, the New Providers made the payments set forth in Part III, ¶6, *supra*.

In a nutshell, the Sale Order provided for the transfer of the Debtors' assets free and clear of all successor liability claims, except that "CMS Successor Liability" under the Medicare provider agreements was subject to the terms thereof. The Debtors' Medicare provider agreements were assigned to the New Providers pursuant to the terms of the Stipulated Orders, which explicitly released the New Providers from any "CMS Successor Liability" claims, including claims under the False Claims Act, that the United States had or could have against them for the Covered Conduct.

Notwithstanding the terms of these Bankruptcy Court Orders, the Relator seeks to recover from the New Providers the attorney's fees and costs she incurred in pursuing the Qui Tam Action against the Debtors. The Relator argues that the consideration paid by the New Providers was an "alternate remedy" under §3730(c)(5) of the FCA and that the Relator is therefore entitled to receive her share of the proceeds plus her attorney's fees and costs. This argument is unavailing as to her claims against the New Providers. Even if the government chose to apply the consideration as being made on behalf of the Debtors to settle, or provide an alternate remedy to, the Qui Tam Action - which it appears to have done based upon its payment to the Relator of a share thereof - doing so would not cause the New Providers to incur liability for the Relator's attorney's fees. A settlement or alternate remedy in the Qui Tam Action settles the underlying substantive issues therein and may entitle the Relator to a claim *against the Debtors* for her attorney's fees and costs. However, the Relator is asserting such claim against the New Providers who are not liable under the Qui Tam Action either as defendants or as successors to the defendants.

The New Providers, at the time they entered into the Stipulated Order to assume the Medicare provider agreements, were not parties to the Qui Tam Action nor did they have any liability thereunder as successors or assignees of the Debtors. In accordance with the terms of the Stipulated Order, from the moment the New Providers first took assignment of the Debtors' Medicare provider agreements, they did so with an explicit release from any successor liability for the alleged Covered Conduct that was the *raison d'etre* for the Qui Tam Action. *See* Stipulated Order, Pt. IV.

The Relator has not provided, nor has the Court found, a single citation to support the imposition of liability for a Relator's attorney's fees upon a nonparty who cannot be held liable, either directly or as a successor to the defendant, for the substantive claims asserted in a *qui tam* proceeding. On the contrary, such a conclusion would appear to run counter to established case law concerning the imposition of attorney's fee liability under other fee-shifting statutes.

> In fact, the Supreme Court has repeatedly emphasized the "crucial connection" between liability on the merits and liability for attorneys' fees under fee-shifting statutes. *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 762, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989). For example, in *Kentucky v. Graham*, 473 U.S. 159, 164, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Court observed that although "[s]ection 1988 does not in so many words define the parties who must bear these costs [of attorneys' fees]," it was "[n]onetheless . . . clear that the logical place to look for recovery of fees is to the losing party—the party legally responsible for relief on the merits." Simply put, "fee liability runs with merits liability." *Id.* at 168, 105 S.Ct. 3099; see also id. at 165, 105 S.Ct. 3099 ("[L]iability on the merits and responsibility for fees go hand in hand."). This court has likewise recognized that one's "status as a nonparty" generally provides protection from fee liability. *See Johnson v. City of Aiken*, 278 F.3d 333, 338 (4th Cir. 2002).

*In re Crescent City Estates, LLC*, 588 F.3d 822, 827 (4th Cir. 2009). Clearly, the New Providers, having assumed the Medicare provider agreements subject to a release from

14

any existing or potential liability for the Covered Conduct, did not thereby assume the very liabilities they had negotiated a release from. Contrary to the Relator's argument that liability for her attorney's fees is an "unknown" FCA action not released under the Stipulated Agreement, it arose in the then-pending Qui Tam Action as a direct consequence of the Covered Conduct alleged therein.

Having concluded that the terms of the Stipulated Orders released the New Providers from potential successor liability for any claims, including the Relator's claims for attorney's fees and costs, arising in the Qui Tam Action, the Court need not consider the successor liability criteria that might otherwise have applied under the state or federal common law.

## V.    CONCLUSION AND ORDER

In accordance with the foregoing discussion, the Court concludes that the New Providers are not liable for the attorney's fees and costs incurred by the Relator in the Qui Tam Action. The Court, therefore, does not reach the question of the reasonableness of such fee request. In accordance with the above,

**IT IS HEREBY ORDERED** that the Fee Motion and the Substitution Motion are both **DENIED**.

Dated: April 17, 2012                                                    BY THE COURT

                                                                Albert S. Dabrowski
                                                                United States Bankruptcy Judge